No. 35,330

FLORENCE CARTIER, *Appellant*, v. THE CENTRAL TRUST COMPANY, as Trustee Under Declaration of Trust Dated March 24, 1933, *Appellee*.

(124 P. 2d 435)

Opinion filed April 11, 1942.

*Jacob A. Dickinson,* of Topeka, argued the cause, and *Edward Rooney,* of Topeka, and *Samuel Friedlander,* of New York City, were on the briefs for appellant.

*Barton E. Griffith,* of Topeka, argued the cause, and *Peter F. Caldwell* and *Philip C. Gault,* both of Topeka, were on the briefs for appellee.

The opinion of the court was delivered by

ALLEN, J.: This action was in the nature of a creditor's bill to set aside a certain alleged fraudulent conveyance and to subject the property conveyed to the satisfaction of plaintiff's claim. The appeal is from an order of the court in sustaining a demurrer to plaintiff's petition.

The petition alleged: On September 1, 1930, at Miami, Fla., C. E. Wardin and wife executed their note to L. P. Cartier for $11,500 due September 1, 1933, with 8 percent interest. The note is under seal and under the laws of Florida is governed by a twenty-year statute of limitations. Interest was paid to March 1, 1932, and there was $19,856.67 due upon the note April 1, 1941.

C. E. Wardin and wife were residents of Florida at the time of the execution of the note; L. P. Cartier was a resident of New York, and since that date none of the parties to the note have ever been residents of Kansas.

On September 5, 1933, five days after the maturity of the note, C. E. Wardin died, a resident of Florida, wholly insolvent, and leaving no assets in Kansas. No administration has been had upon his estate in Florida or Kansas.

On February 28, 1934, L. P. Cartier died testate, a resident of New York. The note in question was transferred to the plaintiff by the executrix of the estate of L. P. Cartier.

On March 24, 1933, C. E. Wardin, together with his wife, then being the owner of the Central Building in Topeka, Kan., conveyed that property to the Central Trust Company "as trustee under declaration of trust dated March 24, 1933," by warranty deed subject to a $25,000 bonded indebtedness. The deed was recorded May 4, 1933, in the office of the register of deeds at Topeka.

The petition alleged that there was no consideration for the conveyance; that the conveyance was made for the purpose of defrauding the creditors of C. E. Wardin, and was taken by the defendant with full knowledge of the intent of C. E. Wardin; that the conveyance rendered C. E. Wardin insolvent, and that the conveyance was designed to conceal the assets of C. E. Wardin and was taken by the defendant to assist in that design; that the fraud practiced by C. E. Wardin and wife and the defendant upon L. P. Cartier and other creditors of C. E. Wardin was unknown to L. P. Cartier, his executrix, successors and assigns, until discovered by the plaintiff in February, 1940.

The plaintiff prays that the conveyance be set aside as to the plaintiff; that the property be subjected to her claim and sold to satisfy it; that a receiver be appointed for the property, and that the defendant be required to account for rents and profits and the plaintiff be awarded other proper relief.

The question presented is whether the petition states a cause of action.

In *Bank v. Ternes*, 110 Kan. 475, 204 Pac. 699, the condition precedent to right to maintain a creditor's bill is stated in the syllabus:

"It is a prerequisite to the maintenance of a creditor's bill, in which it is asked that transfers of real estate be set aside as fraudulent and the property transferred be subjected to the payment of the plaintiff's debt, that he shall have reduced his debt to judgment; and it is ordinarily necessary for him to show that execution has been returned unsatisfied or that the remedies afforded by law have been exhausted."

Plaintiff admits the general rule to be that equity will refuse relief against a conveyance in fraud of creditors until the creditors have recovered a judgment at law establishing the debt, but asserts the rule has been modified as to the requirement of the return of an execution unsatisfied.

Our attention is called to *Farmers State Bank v. Mitchell,* 143 Kan. 286, 55 P. 2d 423, where it was ruled that it is not a prerequisite that execution be returned unsatisfied when the judgment is against the estate of a decedent, which estate is in process of administration as property in hands of the executrix could not be reached by execution. Plaintiff also refers to *Achorn v. Parker,* 145 Kan. 854, 67 P. 2d 561, where it was held that the fact an execution had not been returned unsatisfied was not a bar to an action by the creditor where it appeared the debtor was insolvent when the conveyance was made, and had remained insolvent.

It is not contended the uniform fraudulent conveyance act is in force in this state (see Uniform Laws, Annotated, Vol. 9, p. 327; *American Surety Co. v. Conner,* 251 N. Y. 1, 166 N. E. 783, 65 A. L. R. 244) or that we have an enabling statute permitting a creditor's suit without judgment first obtained.

Plaintiff relies upon *Case v. Beauregard,* 101 U. S. 688, 25 L. Ed. 1004; *Kennedy v. Creswell,* 101 U. S. 641, 25 L. Ed. 1075, and cases from other jurisdictions where for special reasons the rule requiring a judgment as a prerequisite to the creditor's bill has been relaxed. In the case at bar it is urged that the debtor died five days after the maturity of the obligation; that he was wholly insolvent; that proceedings of any sort would be futile if not impossible; that the fraudulent nature of the conveyance was not discovered until long after the time within which administration could have been forced by a creditor; that plaintiff does not now and never has had an adequate remedy at law.

We are unable to agree with the contention that plaintiff has never had an adequate remedy under the laws of this state. Under our statute G. S. 1935, 22-312, if the persons entitled to take out letters of administration within the time therein specified fail to do so, the court is directed to appoint one or more of the principal creditors to undertake the trust. In *Bauserman v. Charlott,* 46 Kan. 480, 26 Pac. 1051, it was stated:

"Under the provisions of the statutes of this state, a creditor of a decedent, having a claim which he wishes to establish against the estate, may, if the widow or next of kin refuse to take out letters of administration, obtain letters for himself or some other person, after 50 days from the death of decedent; and he cannot, without any good cause or reason therefor, defer making such application until the statute of limitations has run, and then claim that all of the time from the death of the debtor to the appointment of the administrator the statute of limitations is suspended on account of the nonappointment of

such administrator. If a creditor would save his claim against the estate of a decedent from the bar of the statute, he must exercise reasonable diligence, if the widow or next of kin refuse to take out letters of administration, to obtain administration for himself or some other person." (Syl. ¶ 4.)

In *Brown v. Baxter*, 77 Kan. 97, 94 Pac. 155, it was held:

"Where no administrator has been appointed the claim of a creditor will become barred by the statute of limitations at the end of three years after the last date on which an administrator might have been appointed." (Syl. ¶ 3.)

See, also, *Black v. Elliott*, 63 Kan. 211, 65 Pac. 215; *Clark v. Eaton*, 109 Kan. 574, 201 Pac. 71.

The fact that the debtor was a nonresident at the time of his death is immaterial. The Kansas statute of limitations fixes the length of time the courts of Kansas are open to litigants. (*Crow v. Hartzler*, 103 Kan. 800, 176 Pac. 651.)

The present action is on a note which became due on September 1, 1933. The maker of the note died September 5, 1933, and the present action was not commenced until March 31, 1941. Under G. S. 1935, 22-702, all demands against the estate of persons deceased, not exhibited as required by law within one year, are forever barred. Under the rule announced in the cases above cited, the statute of limitations begins to run against the creditor from the time the appointment of an administrator could have been made, whether the appointment is made or not. If Wardin had never executed the alleged fraudulent conveyance the claim of plaintiff would have been barred. Can it be urged that the conveyance, although fraudulent, would have placed the creditor in a more favorable position? It would seem clear that the claim sued on is barred by G. S. 1935, 22-702.

Is the action barred by the provisions of G. S. 1935, 22-803? That section reads:

"The real estate liable to be sold as aforesaid shall include all that the deceased may have conveyed with intent to defraud his creditors, and all other rights and interests in lands and tenements not exempt by law: *Provided,* That lands so fraudulently conveyed shall not be taken from any one who purchased them for a valuable consideration, in good faith, and without knowledge of the fraud; and no claim to the lands so fraudulently conveyed shall be made, unless within three years next after the decease of the grantor."

The statute was construed in *Barker v. Battey*, 62 Kan. 584, 64 Pac. 75, where it was stated:

". . . The statute does not expressly provide who may institute proceedings to set aside fraudulent conveyances so made. Doubtless it is within the

power of the executor or administrator to bring a proceeding in equity for that purpose, but there is nothing in the statute, nor in reason, which would exclude a creditor from availing himself of the equitable remedy for his own protection. The creditor has the right to treat the fraudulent conveyance as void to the extent of his debt, and he alone could maintain such an action at common law. . . ." (p. 585.)

See *Horton v. Jones*, 110 Kan. 540, 204 Pac. 1001; *Farmers State Bank v. Mitchell*, 143 Kan. 286, 55 P. 2d 423.

Under G. S. 1935, 22-803, an action by the administrator to set aside a fraudulent conveyance made by the deceased must be brought within three years next after the death of the grantor. We know of no reason why the three-year period of limitation should not apply where the creditor elects to pursue the dilatory debtor by a proceeding in equity. It was the evident purpose of the statute to fix a period within which controversies and disputes as to the fraudulent conveyances made by a decedent in his lifetime should be brought to an end and beyond which courts will not lend their aid to litigants. We think the action was barred under section 22-803.

It is also insisted by defendant that the cause of action is barred by G. S. 1935, 60-306, *third*. Since the action is clearly barred for the reasons stated, we do not enter into that question.

The judgment is affirmed.

HOCH, J., not participating.