**DIVISION OF AID FOR THE AGED, Plaintiff-Appellee, v. WARGO, Exr., Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20442.   Decided February. 24, 1947.

C. H. Bernard, Cleveland, for plaintiff appellee.

H. E. Zdara, Cleveland, H. L. Deibel, Cleveland, for defendant appellant.

## OPINION

By MORGAN, J.

In this case the jury was waived and the trial court granted plaintiff's motion for judgment on the pleadings. Defendant appeals.

The Division of Aid for the Aged in the Department of Public Welfare of the State of Ohio brought this action against Joseph Wargo as administrator of the estate of Mary Wargo,

deceased. The amended petition contains two causes of action. The first cause of action sets forth that Mary Wargo, deceased, received aid in the sum of $955.10 until her death on October 5, 1944, no part of which has been repaid.

That on May 28, 1945, the plaintiff presented said account for allowance and that thereafter the administrator rejected the said claim.

The petition in this case was filed and summons issued on July 27, 1945.

The second cause of action sets forth that John Wargo, the husband of Mary Wargo, received aid from the State in the amount of $1949.22 until his death on March 12, 1944, no part of which has been repaid.

That on May 28, 1945, the plaintiff caused to be presented to the defendant as administrator the said account for allowance and that thereafter the administrator rejected the claim.

The plaintiff prays for judgment against the defendant as administrator in the sum of $2904.32, being the total aid paid to Mary and John Wargo.

The defendant by answer to the first cause of action admitted that Mary Wargo received aid in the aggregate sum of $955.10 and that no part of said sum has been repaid and "admits that on the 13th day of December 1944" plaintiff presented to the defendant the verified claim for allowance.

As to the rejection of the claim the answer states:

"Defendant denies that he disallowed said claim on the 28th day of May, 1945 and says that said claim was disallowed on January 26, 1945."

By way of answer to the second cause of action the defendant admits that John Wargo received aid from the state in the aggregate sum of $1949.22 and that no part of said sum has been repaid and further "admits that a claim for said sum was presented to the defendant as such executor on December 4, 1944." Also, "further answering the second cause of action, the defendant denies that he, as such executor, disallowed said claim on the 28th day of May, 1945 and says that he disallowed said claim on January 26, 1945."

Accordingly, the defendant executor by his answer presented the issue that the claims in both the first and second causes of action are barred because of the failure of the plaintiff to commence an action on the claims within two months after notice of rejection as required by §10509-133 GC.

The defendant also asserts that the claim of the second cause of action should not be sustained because the estate of

Mary Wargo is not liable for aid given her husband.

The trial court by granting judgment to the plaintiff for the full amount claimed, decided that the State of Ohio is not bound to comply with §10509-133 GC and that the estate of Mary Wargo is liable for the aid given her husband during his lifetime.

Sec. 10509-112 GC requires that "creditors shall present their claims whether due or not due, to the executor or administrator within four months after the date of his appointment." In this case the defendant admits that this requirement was complied with by the plaintiff.

Sec. 10509-133 GC provides that:

"When a claim against an estate of a deceased person has been presented to the executor or administrator and has been rejected by him in whole or in part * * * * the claimant * * * * must commence an action thereon within two months after receipt of actual notice of such rejection or reduction * * * or be forever barred from maintaining an action thereon."

It is conceded that the plaintiff presented its claims against the estate of Mary Wargo, and that the claims were rejected. If the date of the rejection of the claims was May 28, 1945, it was less than two months before the filing of this action on the succeeding July 27th. On the other hand, if the allegation of the answer that the claims were disallowed on Jan. 26, 1945, be found to be true, then clearly the two month statute has not been complied with.

What is the statutory purpose of requiring all suits on rejected claims to be brought within two months of the date of rejection? The purpose clearly is to facilitate the administration of estates and to permit them to be settled and disposed of without delay. If the statute is to attain its object it must be held to be an inclusive statute and to apply to all claims. The statute makes no exceptions, and no hardship is imposed on the state in holding it to strict compliance.

This view is supported by the best considered cases outside Ohio. In the case of Bahr, Supt. v Zahm, 219 Ind. 297, the court held (syllabus 5 and 6)

"5. Where a claim in an estate by the state for reimbursement to it for the expense of caring for decedent while he was an inmate of the hospital for the insane was not filed thirty days before final settlement of the estate, the claim was filed too late and was barred by the non-claim statute, since the

statute relieving the state from the operation of statutes of limitation pertains only to remedies and does not relieve it from the obligation to perform the conditions precedent required by such non-claim statute."

"6. There is no statute or rule of law that relieves the state from the obligation to perform conditions precedent upon which the enforcement of a right of action is made to depend."

The Indiana Court rested its decision largely on the authority of State v Evans, 143 Wash. 449, and quoted extensively from the opinion of that court. The court in that case held:

"The statute of non-claim, Rem. Comp. Stat. Sec 1484, providing that no holder of a claim against an estate shall maintain an action thereon unless the claim has been presented, is more than a statute of limitations, and applies to a claim held by the state; notwithstanding Id. Sec. 167, providing that there shall be no limitation to actions brought in the name or for the benefit of the state, which applies only to the ordinary statutes of limitations."

"The weight and reason of the authorities are decidedly to the effect that a state as a claimant is subject to exactly the same limitations as any other creditor who may make claims against the estate of a decedent.

* * * * * * * * * * * "

It is to be noted that the above Indiana and Washington cases dealt with the case where the state had failed to file its claim within the period provided by statute. In both states there exists a statute providing that there shall be no limitation to actions brought in the name or for the benefit of the state. In the instant case the state filed its claim within the four months of the appointment of the administrator as required by §10509-112 GC.

When the state files suit in the state court or is made a party defendant in such court no one will contend that the state as a litigant is not bound by all the rules of pleading established by the court. The requirement as to filing suit within two months of the rejection of a claim is of a similar character.

If the state fails to file its claim in four months of the appointment of an executor or administrator, it may have relief under §10509-134 GC. No such claim can be made for the state when it fails to file suit on its claim "within two months after receipt of actual notice of rejection or reduc-

tion." The statute does not begin to run against the state until actual notice of the rejection of its claim is received.

The case of State v Evans, supra, was approved and followed in Rhodes, appellant, v State of Washington, 196 Wash. 618, where it was held:

"The statute of non-claim, Rem. Rev. Stat. 1477 applies to all claims including claims by the state, and a claim by the state against the estate of an insane decedent for a sum due for support and maintenance is barred when not timely filed."

In State ex rel Slinkard etc. v Edwards Admr. 11 Ind. App. Rep. 226, the court held:

"The provision in Sec. 2465 (R.S. 1894) that a claim against a decedent's estate filed after one year shall be barred if not filed at least thirty days before the final settlement of the estate, applies to a claim of the state upon a judgment upon a forfeited recognizance bond."

The court said at page 231:

"Sec. 305 R. S. 1894, enacts that 'limitations of actions shall not bar the state of Indiana except as to sureties.' Granting without deciding that the appellee's decedent does not occupy the position of a surety in the judgment the question arises, does the section of the statute just quoted apply to the limitation provided in §2465 supra? We are of opinion that it does not. We think it has reference to the ordinary statutes of limitation contained in the sections preceding section 305, supra, in the chapter of the Code relating to civil procedure. It is our opinion that the state is as effectively barred from prosecuting a claim against a decedent's estate which was not filed at least thirty days before the filing of the final settlement report as any other claimant would be barred. If the state may never be barred from filing and prosecuting a claim against estates of deceased persons, then it may prosecute such claims even after the final report is made and approved and the administrator or executor is discharged, and it is not and will not be contended that this may be done."

In the case of In re Estate of Mabel Dodds, 154 Kan. 562, the supreme court of Kansas held:

"With respect to the time within which to present the demand against an estate, the state is in the same position as any other creditors. There is no hardship in this, particular-

ly with respect to the type of claim attempted to be enforced here, for the state knew of the death of Mabel Dotson as soon as it occurred. There is no reason why it could not have moved promptly."

In the case of Hill v State, 23 Ark. 604, the court held:

"The statute of non-claim is a bar to the claims of the state if not exhibited within the time prescribed by the statute as in the case of private individuals."

The court said at page 610:

"It is true that it is an old maxim of the English Law, that no time runs against the crown. * * * * * The reason sometimes assigned why no laches shall be imputed to the king is that he is continually busied for the public good and has not leisure to assert his right within the period limited to subjects. Coke Lit. 90; 1 Black. 247. A better reason is, the great public policy of preserving public rights and property from damage and loss through the negligence of public officers."

The wholly fictional ground given by Coke and Blackstone for the rule that no laches shall be imputed to the king can have no application to a country which established its independence of such a king. Also, the desirability of "preserving public rights and property from demand and loss through the negligence of public officers" is not as a matter of policy of greater importance than the desirability of giving full effect to the statutes enacted for the prompt settlement of estates.

We have considered this question more carefully because of the contrary opinion expressed by Hornbeck, J., in the case of **Division of Aid for the Aged v Marshall, 42 Abs 131.** The standing of Judge Hornbeck is such that it is with reluctance that we have reached a different conclusion. However what is said by Judge Hornbeck in the case about the state and the statute of limitations is pure dictum because the actual decision in the case was that the answer in the action to enforce the state's claim was sufficient to assert a defense of estoppel "even though the statute of limitations contained in §10509-133 GC does not run against the state." Judge Hornbeck stressed the fact that the plaintiff is an agency of government carrying on governmental functions in the administration of aid for the aged. This, no doubt, is true, but what is its impor-

tance? The desirability of having claims filed promptly and suits brought within two months of their rejection applies to all claims of the state, whether governmental or proprietary. What we are really dealing with here is a construction of §10509-133 GC and it is our opinion that this section includes all claims against an estate of a deceased person, including claims held by the state, and that the fact that the claim is based upon the exercise of a governmental function is of no importance.

The second cause of action against the estate of Mary Wargo sets up a claim arising from aid given to her husband. This is controlled by §1359-7 GC which is as follows:

"Upon the death of a person, the total amount of aid paid to said person and to his or her spouse under this act, shall be a preferred claim against the estate of such deceased person, having priority and preference over all unsecured claims except the bill of funeral director not exceeding two hundred dollars, the expense of last sickness and those of administrator, and the allowance made to the widow and children for their support for twelve months." (effective Aug. 14, 1941)

This section was considered by the supreme court in **Division of Aid for the Aged against Hogan, Admr., 143 Oh St 186.** In that case it was held that the section "applies only to the estate of a recipient of aid and therefore where a husband has received aid **but his wife has not** no claim for the aid furnished the husband may successfully be made against the wife's estate in the absence of an agreement on her part to be bound."

In the instant case, however, both the husband and wife received aid from the Division of Aid for the Aged. It thus differs from the case decided in **143 Oh St 186.** Undoubtedly the State of Ohio has the right to establish the terms and conditions on which it furnishes aid. By §1359-7 GC it clearly appears that when aid is paid to any person, then such aid together with aid "to his or her spouse under this act" shall be a preferred claim against the estate of such person. When Mary Wargo received aid she received it under the conditions of §1359-7 GC and we think the trial court was right in holding that her estate is bound to respond to the state for aid furnished her husband, provided the statutes as to administration of estates are complied with.

We have, however, a disputed issue of fact in both the first and second causes of action as to whether the state fail-

ed to file its suit within two months of the notice of the rejection of the claims.

This case is therefore reversed and remanded to the Municipal Court to try out the issues of fact presented by the pleadings.

HURD, PJ, SKEEL, J, concur.